UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONI TURNER, et al.,
    Plaintiffs,

vs.

THE AMERICAN BUILDING
CONDOMINIUM CORPORATION, INC.,
    Defendants.

Case No. 1:12cv291
Weber, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

This matter is before the Court on defendants' motion for summary judgment (Doc. 45), plaintiff Bryan Cardenas' memorandum in opposition to defendants' motion (Doc. 51), and defendants' reply in support of their motion. (Doc. 53). Defendants have filed proposed findings of fact and conclusions of law in support of the motion for summary judgment (Doc. 46), which plaintiff Cardenas has highlighted as true, false or irrelevant in accordance with the district judge's scheduling order (Doc. 63).[1]

I. Introduction

Plaintiffs Toni Turner, Bryan Cardenas and Ben Yamaguchi filed this action against defendants The American Building Condominium Corporation, Inc. and Towne Properties Asset Management Co., alleging housing discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, and Ohio Rev. Code Ch. 4112 based on defendants' refusal to provide plaintiffs handicapped parking. (Doc. 21). Plaintiffs also allege that defendants (1) violated the

---

[1] Defendants also filed a supplemental reply memorandum in support of the motion for summary judgment. (Doc. 64). The Court will not consider the supplemental memorandum because defendants did not obtain leave of Court to file it. *See* S.D. Ohio Civ. R. 7.2(a)(2): "No additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."

FHA and Ohio Rev. Code Ch. 4112 by breaching the covenant of habitability implicit under Ohio law in plaintiffs' Lease/Purchase Agreements, and (2) refused to provide handicapped parking in violation of Ohio Rev. Code § 4511.69(E), which requires the state and its political subdivisions to provide and designate handicapped parking spaces at offices and facilities and publicly owned garages. (*Id.*). Plaintiff Toni Turner has been dismissed from the lawsuit. (Doc. 38). Plaintiff Yamaguchi has not filed a response to defendants' motion for summary judgment.

## II. Undisputed Facts

1. The American Building is a mid-rise building located at 30 E. Central Parkway in downtown Cincinnati, Ohio. (Doc. 45, Exh. A, Chad Taake Decl., ¶ 1)

2. On December 28, 2004, the building was converted to condominiums and its Declaration of Condominium Ownership ("Declaration") was recorded with Hamilton County, Ohio. (Takke Decl., ¶ 1; Exh. 1).

3. After December 2007, control of the condominium association was transferred from the developer to The American Building Condominium Corporation, Inc. ("the Board"), a board of directors consisting of the building's homeowners. (Taake Decl., ¶ 2).

4. Under the Declaration, all residential units in the American Building are assigned at least two spaces in the parking garage. (Takke Decl., Exh. 1, Article III, § 2(g)).

5. The Board may assign specific parking spaces, which may be changed from time to time. (Taake Decl., Exh. 1, Article III, § 2(g)).

6. Six parking spots in the parking garage were originally designated as "handicapped" parking spaces, which were not assigned to any particular owner. (Taake Decl., ¶ 4; Yamaguchi Depo., p. 19). At some point, the spots were redesignated "CA" for

2

condominium association use, and some of them were designated as short-term parking "loading and unloading" zones. (Taake Decl., ¶ 5; Yamaguchi Depo., p. 19; Cardenas Depo., pp. 11-16).

7. In 2005, Yamaguchi and James Williamson purchased American Building Unit 604, where Yamaguchi lived until he moved out in 2006. (Yamaguchi Depo., p. 13).

8. Yamaguchi moved back into Unit 604 in 2010. (Yamaguchi Depo., p. 14).

9. Yamaguchi is not currently disabled, has never been disabled, has never needed or requested a handicapped parking spot at any time in his life, and is not currently claiming that he was discriminated against based on some disability that he had or has. (Yamaguchi Depo., pp. 15-16).

10. The Declaration provides, "No Unit or part of a Unit . . . shall be rented . . . for transient or hotel purposes, which is defined as: . . . (ii) rental to roomers or boarders, that is, rental to one or more persons of a portion of a Unit only. No lease may be of less than an entire Unit." (Taake Decl., Exh. 1, Article III, § 2(h)).

11. Cardenas entered into a lease agreement with Williamson effective March 2010 and sublet half of Unit 604 from Williamson. (Cardenas Depo., pp. 19, 20-21).

12. Cardenas moved into the American Building, Unit 604, in March 2010. (Cardenas Depo, pp. 7-8).

13. Cardenas never had a landlord/tenant relationship with either defendant. (Cardenas Depo, pp. 19, 20-21).

14. Cardenas had broken his back in 2000, which left him with free floating bone fragments, disc fragments and scar tissue. Cardenas continues to suffer sporadic flare-ups, which

3

may prevent him from working two to three days at a time. (Cardenas Depo., pp. 7, 37).

15. In the spring of 2010, Cardenas and another unit owner filed charges with the Ohio Civil Rights Commission ("OCRC"), alleging disability discrimination based on a lack of handicapped parking in the American Building's parking garage. (Taake Decl., ¶ 6; Cardenas Depo., pp. 11-12). When given a choice between mediation or an investigation of the charges, the Board opted for mediation and the charging parties declined mediation, following which the OCRC began its investigation. (Taake Decl., ¶ 7).

16. On May 12, 2010, a Board member emailed Yamaguchi and asked whether Cardenas had a handicap and needed more accessible parking. (Yamaguchi Depo., Exh. 1).

17. Yamaguchi forwarded the email to Cardenas, who responded that the current parking situation was "fine" and that he would "only need something accessible in the event of a flair up [sic] from [his] back." (Yamaguchi Depo., Exh. 1). Cardenas further stated he had a "handicapped placard" but was able to cope with the current situation and would notify the Board if his condition changed. (*Id.*).

18. On May 21, 2010, Yamaguchi emailed Jeff Blanton, Property Manager for Towne Properties, advising him that Cardenas is "handicapped" and requesting "special consideration for parking accommodations in the parking garage" for Cardenas. (Yamaguchi Depo., Exh. 2). Yamaguchi sent a second, similar email on June 1, 2010. (*Id.*).

19. Blanton responded to Yamaguchi on behalf of the Board two days later on June 3, 2010, informing him that the Board had agreed to temporarily redesignate for his unit a parking space that the developer had originally marked for handicapped use. Blanton requested

4

documentation, including a copy of the Bureau of Motor Vehicles (BMV) handicap placard; a doctor's note documenting the need for accommodation; and a description of the kind of parking place needed to accommodate the disability. (Yamaguchi Depo., Exh. 3).

20. One month later, on July 4, 2010, after having requested a disability placard from the State of Ohio (Cardenas Depo., p. 17), Cardenas provided the documentation and informed the Board: "My physical requirements are to be within 75 feet of the entry door. If my condition is aggravated I do use a cane, on rare occasions I am confined to a wheelchair . . . if there is a space available close to a ramp, that would be the best case scenario for me. We will relinquish the parking space at the windows (exterior wall) for the move." (Yamaguchi Depo., Exh. 4).

21. The Board met with the OCRC on June 10, 2010. At the meeting, the Board voted to provide Cardenas with a parking accommodation. (Taake Decl., ¶ 8).

22. The first time the OCRC requested that the Board provide any specific accommodation for Cardenas was September 23, 2010. (Taake Decl., ¶ 9).

23. The Board complied with the OCRC's request the following month and Cardenas was provided a dedicated, assigned parking space with an aisle access near a ramp. (Taake Decl., ¶ 10; Yamaguchi Depo., p. 30).

24. Yamaguchi testified that he has not suffered any financial damages as a result of issues raised in his complaint. (Yamaguchi Depo., p. 35).

25. Cardenas testified at his deposition that his back condition has remained fairly consistent since March 2010 with the exception of sporadic flare-ups. (Cardenas Depo., p. 41).

5

26. Cardenas lived in the American Building for one year from March 2010 to March 2011. (Cardenas Depo., p. 40).

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

6

IV. **The Fair Housing Act**

Title 42 U.S.C. § 3604(f), provides, in pertinent part:

[I]t shall be unlawful--

. . . .

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

(3) For purposes of this subsection, discrimination includes--

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C.A. § 3604(f).

Ohio Rev. Code § 4112.02(H) likewise makes it unlawful to discriminate in the provision of housing accommodations because of a disability of an individual. Claims brought under the FHA and the Ohio statute are interpreted in a similar manner. *Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp.2d 850, 856 n. 6 (S.D. Ohio 2009) (citing *Groner v. Golden Gate Gardens*

7

*Apartments,* 250 F.3d 1039, 1043 (6th Cir. 2001); *Carter v. Russo Realtors,* No. 00AP-797, 2001 WL 537019 (Ohio 10th App. Dist., May 22, 2001)).

There are three possible theories under which a plaintiff who alleges a violation of 42 U.S.C. § 3604(f) may proceed: disparate treatment, disparate impact, and failure to make reasonable accommodations. *Smith & Lee Associates, Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 790 (6th Cir. 1996). Plaintiffs here seek to proceed under the third theory: failure to make reasonable accommodations.

The FHA imposes an affirmative duty to reasonably accommodate disabled individuals. *Id*. at 795 (citing *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994), *aff'd*, 514 U.S. 725 (1995)). To prevail on a failure to accommodate claim under 42 U.S.C. § 3604(f)(3), the plaintiff must prove the following elements: "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap [is] necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." *Overlook Mut. Homes, Inc.*, 666 F. Supp.2d at 855 (citations omitted).

"When analyzing whether an accommodation is required under [the FHA], the three operative elements are 'reasonable,' 'equal opportunity' and 'necessary.'" *Howard v. City of Beavercreek,* 276 F.3d 802, 806 (6th Cir. 2002) (citing *Smith,* 102 F.3d at 794). An accommodation is reasonable where it does not impose "undue financial and administrative burdens." *Id*. (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 410, 412

8

(1979)). To prove that an accommodation is "necessary," plaintiffs must prove that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* (citing *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir. 1995)).

The damages recoverable for a violation of the FHA's prohibition against discriminatory housing practices include actual and punitive damages, injunctive relief, and reasonable attorney fee and costs. 42 U.S.C. § 3613(c).

### V. Defendants' motion for summary judgment

Defendants move for summary judgment on all claims against them pursuant to Fed. R. Civ. P. 56. Defendants contend that plaintiff Yamaguchi's claims must be dismissed because it is undisputed that he is not disabled and has never been discriminated against on the basis of a disability, including by requesting and being refused a handicapped parking spot.

Defendants contend they are entitled to summary judgment on plaintiff Cardenas' failure to accommodate claims because he was not a "proper resident" of the condominium unit where he resided, and it is therefore impossible for him to show he would likely be denied an equal opportunity to use and enjoy the condominium "but for" the requested accommodation. Defendants further allege that regardless of an allegedly improper leasing arrangement between plaintiff and Williamson, the co-owner of the unit, the undisputed facts show that defendants never denied Cardenas' request for an accommodation but in fact provided him with an accommodation that went above and beyond the requirements of the law. Defendants allege that Cardenas informed them that he had a sporadic back condition for which the parking situation at the time was fine and he would notify the Board if his condition changed, which never occurred. Defendants allege that they nonetheless provided Cardenas with a dedicated, assigned parking

9

space with an aisle access near a ramp.

Finally, defendants contend they are entitled to summary judgment on plaintiff Cardenas' claims for breach of the implied covenant of habitability and violation of Ohio Rev. Code § 4511.69(E). Defendants contend that the covenant of implied habitability does not apply to the provision of parking, and the requirements of § 4511.69(E) do not apply to private landlords.

In his opposing memorandum, plaintiff Cardenas does not address defendants' arguments related to the implied warranty of habitability under Ohio law and the inapplicability of Ohio Rev Code § 4511.69(E). Plaintiff addresses only the failure to accommodate claims. Plaintiff argues there are numerous disputed factual issues which preclude a grant of summary judgment in defendants' favor on his claims that defendants discriminated against him by denying him for an unreasonable period of time a handicapped parking spot as a reasonable accommodation for his disability. Plaintiff contends that the evidence shows numerous requests for an accommodation were made on his behalf as early as May 2010, but defendants unreasonably delayed providing a reasonable accommodation. Plaintiff argues there is no evidence that shows he had an improper lease arrangement which relieved defendants of their duty to accommodate his disability. Plaintiff claims he suffered emotional damages as a result of defendants' denial of a reasonable accommodation for which he is entitled to recover compensatory and punitive damages.

In reply, defendants allege that plaintiff has failed to provide admissible evidence in support of his opposing memorandum. Defendants also contend that they had legitimate reasons for their failure to provide an accommodation until October 2010, one month after the OCRC requested that the Board provide an accommodation. Defendants contend that: (1) Cardenas declined to participate in OCRC's mediation process; (2) plaintiff delayed providing

10

documentation of his handicap which defendants requested; and (3) plaintiff continued to indicate to defendants that his back condition did not require any immediate accommodation.

## VI. Resolution

**1. The Court will consider the documents submitted by plaintiff Cardenas in opposition to the summary judgment motion.**

Defendants generally allege in their reply memorandum that documents submitted by plaintiff in opposition to the motion for summary judgment are inadmissible for a number of different reasons. Defendants allege that with "the exception of a few documents that largely appear to already be part of Yamaguchi's deposition exhibits, *none* of these materials are in the record"; some of the exhibits, and particularly those relating to plaintiff Toni Turner, are not relevant to the merits of plaintiff Cardenas' claim; and "these exhibits are hearsay without exception." (Doc. 53 at 6).

Insofar as defendants suggest that evidence introduced into the record for the first time in response to a motion for summary judgment cannot be considered by the Court in resolving the motion, defendants' argument is not well-taken. Further, defendants have not specified which of the documents submitted by plaintiff are not relevant to his claims and why they are not relevant. Finally, defendants do not challenge the authenticity of the emails and other correspondence submitted by plaintiff, and there is no apparent reason to question the authenticity of these communications. Nor do the e-mails appear to be hearsay as defendants generally assert. They are not offered, and the Court will not consider them, for the truth of the matter asserted. Rather, the emails "are verbal acts, offered to show what was said when and by whom. The statements themselves are the evidence, not the truthfulness or lack thereof of what the statements purport to

11

express." *See Midwest Retailers Ass'n, Ltd. v. City of Toledo*, 582 F. Supp.2d 931, 935 (N.D. Ohio 2008) (citing *Dorchy v. Jones,* 320 F. Supp.2d 564, 578 (E.D. Mich. 2004)). Similarly, documents related to proceedings before administrative agencies (Exhs. D, J, K) will be considered only for the timing of the matters before the Court. Finally, defendants do not dispute the authenticity of documentation showing that plaintiff qualified for a "handicapped placard" during the relevant time period (Exhs. C, H). Accordingly, the Court will consider these documents in issuing its recommendation on the motion for summary judgment.

**2. Defendants are not entitled to summary judgment on plaintiff Cardenas' failure to accommodate claims.**

Plaintiff Cardenas has produced sufficient evidence to create a genuine issue of material fact on the essential elements of his failure to accommodate claims under both the FHA and the Ohio statute. First, there appears to be no dispute that plaintiff has a "handicap" within the meaning of 42 U.S.C. § 3602(h)[2] in the form of a back impairment. Second, there is evidence which shows that defendants had notice of the handicap as early as May 12, 2010. (Doc. 42-1, Yamaguchi Depo., Exh. 1). Plaintiff advised the Board via an email Yamaguchi sent on that date that the present parking situation was "fine"; however, plaintiff stated he would need a more accessible spot in the event his back condition flared up and that he had a handicapped placard and would supply a copy of it or medical documentation if necessary. (*Id*.). Shortly thereafter, plaintiff expressly advised defendants of his handicap through Yamaguchi and also informed defendants of his need for an accommodation. (*See* Yamaguchi Depo., Doc. 42-1, Exh. 2). On

---

[2] Section 3602(h) defines a "handicap" as "a physical . . . impairment which substantially limits one or more of [a] person's major life activities[.]"

12

May 21, 2010, Yamaguchi sent an email to Jeff Blanton, Property Manager for Towne Properties, stating: "My partner and resident of the American Building unit 604, Bryan Cardenas, is handicapped and requests special consideration for parking accommodations in the parking garage. Please forward this to the Board for their consideration." (*Id.*). Yamaguchi followed up with an email dated June 1, 2010, specifically stating that he was "requesting for a second time special consideration for parking for one of my spaces due to my partners [sic] handicap status. He [Cardenas] needs a space that provides for clear ingress and egress from the building with unfettered access from more than three stairs. . . ." (*Id.*). Defendants requested documentation of plaintiff's handicap on June 3, 2010. (*Id.*, Exh. 3). Thus, the undisputed facts show that defendants were put on notice of Cardenas' handicap as early as May of 2010.

Third, there are disputed issues of material fact as to whether accommodation of Cardenas' handicap was necessary to afford him an equal opportunity to use and enjoy the condominium. Defendants contend that plaintiff never requested a dedicated parking space but instead informed the Board that the current parking assignment was "fine," that he would need something accessible only in the event of a flare-up of his back impairment, and that he would notify the Board if his condition changed, which never occurred. (Doc. 53 at 4-5, citing Yamaguchi Depo., Exh. 1). Defendants further contend that plaintiff's one-month delay in providing documentation of his handicap as requested by the Board on June 3, 2010, and his decision to not pursue the OCRC mediation process, demonstrate that he was not in need of an immediate parking accommodation. (*Id.* at 5). However, the evidence shows that while Cardenas indicated the current parking situation was "fine" as of May 12, 2010 (Doc. 42-1, Yamaguchi Depo., Exh. 1), he shortly thereafter requested a special accommodation (*Id.*, Exh. 2); he supplied

13

information requested by defendants to document his handicap and made a specific request that the parking spot be within 75 feet of the entry door and close to a ramp "if" such a space was available (*Id.*, Exh. 4); and he never abandoned his OCRC complaint. Thus, whether Cardenas required an immediate parking accommodation is a disputed issue.

Fourth, defendants have not introduced any evidence to show that the accommodation was unreasonable. Defendants have not produced evidence which suggests that designating a spot for Cardenas would have imposed an undue financial or administrative burden.

Finally, while defendants eventually made the requested accommodation, they did not do so until October 2010, nearly five months after Cardenas had originally requested the accommodation.

At least one other court has found a likelihood of a violation of a plaintiff's rights under the FHA in a case involving a similar accommodation. *See Shapiro v. Cadman Towers, Inc.*, 844 F. Supp. 116 (E.D. N.Y. 1994). In *Shapiro*, a tenant with a disability sought a preliminary injunction against a cooperative housing corporation challenging the corporation's refusal to provide her with an indoor parking space. The Court relied on 24 C.F.R. § 100.204(a) in finding that modification of the corporation's first come/first served policy for awarding indoor parking spaces to allow the tenant to be issued a parking space on the garage's ground floor was likely to be a "reasonable accommodation" of the tenant's handicap under the FHA. That regulation states: "It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas." *Id.* at 125. The Court found example 2 listed under §100.204(b) to be

comparable to the situation before it and to therefore be instructive:

> Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.

(*Id.* at 127, citing 24 C.F.R. § 100.204, example (2)). As in *Shapiro* and in accordance with the above example, there is an issue here as to whether provision of a handicapped parking spot as requested by plaintiff was likely a reasonable and necessary accommodation of plaintiff's handicap.

Although there is evidence to support each of the elements of plaintiff's failure to accommodate claims, defendants contend that plaintiff cannot prevail on his claims because his tenancy violated the Declaration, which precluded the owners of units from subletting a portion of the unit. (Doc. 45 at 11-12, citing Blanton Decl., Exh. 1, Article III, § 2(h)). Defendants therefore argue that plaintiff is unable to establish that he likely would be denied an equal opportunity to use and enjoy the dwelling but for the accommodation. In support of their position, defendants rely on the district court's decision in *Choices in Cmty. Living, Inc. v. Petkus*, No. 3:11-cv-19, 2012 WL 1122368 (S.D. Ohio Apr. 3, 2012), *aff'd*, 517 F. App'x 501 (6th Cir.

15

2013).³ The district court in *Choices in Cmty. Living, Inc.* found that plaintiff could not prevail on a failure to accommodate claim based on the defendant realtor's alleged failure to show property intended by the prospective purchasers as a group home because under the local zoning ordinance, the proposed tenancy was unlawful. *Id.*, at *8. Therefore, the zoning ordinance, not the refusal to provide a proposed accommodation, would have prevented the tenants from living at the property. The Court determined that plaintiffs had not shown pretext because it was clear from the evidence presented that defendant's concern lay not with the disability of the prospective tenants but with the fact that four unrelated individuals wanted to rent a house zoned for single-family use. *Id.*, at *12.

The facts of *Choices in Cmty. Living, Inc.* are inapposite to the facts of this case, and the decision is not dispositive of plaintiff's claims. There is no indication here that defendants denied plaintiff an accommodation based on the existence of an improper leasing arrangement. Nor have defendants produced any evidence to show that they ever raised a concern about plaintiff's leasing arrangement and the fact that he did not have a landlord/tenant relationship with the Board prior to the institution of this lawsuit. The belated assertion of plaintiff's allegedly improper leasing arrangement in an attempt to show that defendants had no duty to accommodate plaintiff not only fails to establish it is unlikely plaintiff was denied the equal opportunity to enjoy his dwelling, but it also suggests that defendants' reasons for the denial are pretextual. *See Choices in Cmty. Living, Inc.*, 517 F. App'x at 506 (lack of contemporaneous documentation for proffered

---

³ Although the plaintiffs in *Choices in Cmty. Living, Inc.*, presented a failure to accommodate claim, the Court of Appeals did not analyze plaintiff's claim under that category of FHA claims but instead analyzed the claim under the catch-all category described in *Lindsay v. Yates*, 578 F.3d 407 (6th Cir. 2009).

16

justification and belated reliance on justification may show pretext) (citations omitted).

For these reasons, there are genuine issues of material fact as to whether defendants violated plaintiff Cardenas' rights under the FHA and Ohio Rev Code § 4112.02(H) by denying him the reasonable and necessary accommodation of a handicapped parking spot. There are also genuine issues of material fact concerning damages. Defendants' motion for summary judgment on the failure to accommodate claims brought by plaintiff Cardenas should therefore be denied.

**3. Defendants are entitled to summary judgment on plaintiff Cardenas' remaining claims.**

Plaintiff Cardenas makes allegations in the amended complaint that (1) defendants breached the implied covenant of habitability by failing to provide him with a safe, secure and habitable residence and residential parking in violation of the FHA and Ohio Rev. Code Ch. 4112, and (2) Ohio Rev. Code § 4511.69(E) requires that a landlord must provide handicapped parking in all residential units. Defendants argue that plaintiff is not entitled to relief under these laws. Plaintiff has not responded to defendants' arguments. Plaintiff has not cited any authority pertaining to the implied covenant of habitability. Nor has plaintiff cited any authority to show that § 4511.69(E), which by its terms applies to the state and political subdivisions, also applies to private landlords. *See* Ohio Rev. Code § 4511.69(E) ("handicapped parking spaces or disability parking spaces, shall be provided and designated by all political subdivisions and by the state and all agencies and instrumentalities thereof at all offices and facilities, where parking is provided, whether owned, rented, or leased, and at all publicly owned parking garages."). Because plaintiff has not shown there is a genuine issue concerning his right to relief under these state law provisions, summary judgment should be granted in favor of defendants on these claims. Plaintiff

Cardenas should be limited to pursuing his claims for failure to accommodate under the FHA and Ohio Rev. Code Ch. 4112.

### 4. Defendants are entitled to summary judgment on plaintiff Yamaguchi's claims.

Defendants move for summary judgment on plaintiff Yamaguchi's claims on the ground Yamaguchi is not a disabled individual and defendants did not discriminate against him based on a disability. Plaintiff Yamaguchi has not filed a response in opposition to defendants' motion.

The Court's obligation when evaluating an unopposed motion for summary judgment is as follows:

> [T]he Court must review carefully those portions of the submitted evidence designated by the moving party. The Court will not, however, *sua sponte* comb the record from [the non-moving party's] perspective. Instead, the Court may reasonably rely on [the movant's] unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted. If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that [the movants] have carried their burden. . . .

*Mongan v. Lykins,* No. 1:09-cv-00626, 2010 WL 2900409, at *3 (S.D. Ohio July 21, 2010) (internal quotations and citations omitted). Accordingly, the Court has reviewed the record to determine whether there is a genuine issue of material fact as to any claim brought by Yamaguchi.

There is no dispute that plaintiff Yamaguchi does not have a "handicap" within the meaning of 42 U.S.C. § 3602(h). However, the protections of the FHA are not limited to individuals who are themselves handicapped. The FHA also prohibits discrimination against a person associated with a buyer or renter with a handicap. 42 U.S.C. § 3604(f)(2)(C). Nonetheless, the record does not include any facts to show that Yamaguchi has been discriminated against in any manner because of plaintiff Cardenas' handicap. Accordingly,

18

Yamaguchi cannot establish the elements of a failure to accommodate claim under the FHA or Ohio law.

Moreover, Yamaguchi cannot prevail on a claim under Ohio Rev. Code § 4511.69(E) for the reasons stated above. Finally, there is no indication in the record that defendants breached an implied covenant of habitability in connection with any lease agreement with Yamaguchi. Summary judgment should therefore be granted in favor of defendants on plaintiff Yamaguchi's claims.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (Doc. 45) be **GRANTED** as to plaintiff Yamaguchi's claims and plaintiff Yamaguchi be **DISMISSED** from the lawsuit.

2. Defendants' motion for summary judgment (Doc. 45) be **GRANTED** as to plaintiff Cardenas' claims for breach of the implied warranty of habitability and violation of Ohio Rev. Code § 4511.69(E).

3. Defendants' motion for summary judgment be **DENIED** as to plaintiff Cardenas' claims for failure to accommodate under the FHA and Ohio Rev. Code Ch. 4112.

Date: 2/7/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONI TURNER, et al.,
    Plaintiffs,

Case No. 1:12cv291
Weber, J.
Litkovitz, M.J.

vs.

THE AMERICAN BUILDING
CONDOMINIUM CORPORATION, INC.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).