UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Toni Turner, Bryan Cardenas, and Ben Yamaguchi,

Plaintiffs,

vs.

The American Building Condominium Corporation, Inc., and Towne Properties Asset Management Co.,

Defendants.

Case No. 1:12-cv-291

**ORDER**

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (Doc. 66), and Defendants' objections thereto (Doc. 69). The Magistrate Judge recommends that Defendants' motion for summary judgment be granted as to the Plaintiff Yamaguchi's claims; that the motion be granted as to plaintiff Cardenas' claims for breach of the implied warranty of habitability and violation of Ohio Rev. Code 4511.69(E); and that the motion be denied as to Cardenas' claims for failure to accommodate under the Fair Housing Act and Ohio Rev. Code Ch. 4112. Plaintiff Turner previously settled and dismissed her claims against the Defendants. (Doc. 38)

Plaintiffs do not object to the Magistrate Judge's Report. Defendants object to the recommendation concerning Cardenas' failure to accommodate claim. (Doc. 69)

Upon *de novo* review of the record, and having fully considered the parties' briefs, depositions and exhibits, and applicable authority, and in light of Defendants'

objections, the Court accepts in part and rejects in part the Magistrate Judge's recommendations. The Court concludes that Defendants' objections regarding Cardenas' failure to accommodate claim have merit, and will sustain the objections. The Court agrees with the Magistrate Judge's conclusions and recommendations concerning the balance of Cardenas' claims and Yamaguchi's claims. Therefore, the Court will grant Defendants' motion for summary judgment on all of Plaintiffs' claims.

I. Background and Procedural History

Plaintiffs Toni Turner, Ben Yamaguchi and Bryan Cardenas lived in two condominium units in the American Building, located at 30 E. Central Parkway in downtown Cincinnati, Ohio. Ms. Turner purchased her unit, #603, in 2005 and lived there throughout the times alleged in the complaint. Yamaguchi and James Williamson (not a party to this case) jointly purchased Unit 604 in 2005. Yamaguchi lived there with Williamson until sometime in 2006, when Yamaguchi moved out and Williamson continued to live in the unit. Yamaguchi and Cardenas are partners; they moved into Unit 604 in March 2010, when they moved to Cincinnati from Chicago, where they had been living for a couple of years. Cardenas explained that when he and Yamaguchi moved into Unit 604 in 2010, he agreed to share the mortgage and other expenses, essentially assuming Williamson's one-half share of the financial obligations. Cardenas has a written lease agreement with Williamson to that effect.

Sometime in 2000, Cardenas broke his back. Since then, he has sporadic flare-ups of a disabling condition caused by free floating bone and disc fragments in his lower back. Cardenas has received Social Security disability compensation since August 2002. He testified that when he has a "flare-up" of his condition, it may prevent him

from working for two or three days at a time, and that he uses a cane or occasionally a wheelchair, during such flare-ups. He obtained a disabled parking placard for his vehicle while he lived in Illinois, which he has renewed every four years. Cardenas testified that during the time he lived in Cincinnati, he was never incapacitated "... for more than just a sporadic day here and a day there." (Cardenas Deposition at 41) Yamaguchi concedes that he is not and never has been disabled.

The American Building has a separate parking garage, and the Declaration of Condominium states that each residential unit is assigned at least two spaces in that garage. The Board of Directors may assign specific parking places to individual unit owners, and these assignments may change from time to time. At the original condominium conversion, six parking places in the garage were designed for handicapped use. Sometime before March 2010 (when Yamaguchi and Cardenas moved into Unit 604), those six spots were re-designated by the Board for condominium association use, including two spots that were marked for a loading/unloading, short-term parking zone.

On or about May 6, 2010, Cardenas filed a charge with the Ohio Civil Rights Commission ("OCRC"), alleging disability discrimination. (Turner also filed an OCRC charge the same day.) Cardenas and Yamaguchi concede that prior to filing the charge, neither of them had asked the Board to assign a handicapped-accessible parking spot to Cardenas. Chad Taake, who was president of the Board from April 2011 to April 2013, states in his declaration that OCRC asked the Board to choose between mediating the charge filed by Cardenas or undergoing an investigation. The Board chose mediation but Cardenas and Turner both declined that option, and OCRC

began its investigation.

On May 12, 2010, Gina Reichard (f/k/a Gina Luken, a member of the condominium Board of Directors) sent an email to Yamaguchi, stating: "Hi Ben, How are things? Haven't gotten to talk to you much since you've been back. Just a quick question: Does Bryan have a handicap and need more accessible parking? If so, I wasn't aware of this nor was any member of the board. Thanks, Gina." (Yamaguchi Dep. Ex. 1) On May 12, 2010, Yamaguchi responded: "Gina, I forwarded this to Bryan and here is his response." Cardenas stated:

> Ben, the parking, as such, is fine. I would only need something more accessible in the event of a flair up from my back. If there were handicapped parking in the building, I imagine they would not be assigned and it would only be needed by me for short term increments. Since there are a number of handicapped people in the building and if they are going to assign them according to need then in my opinion, anyone with a handicapped placard should be on 1, 2, and 4 with respect to the entrances to the building.
>
> The much larger concern I have is over the reduced lighting in the garage. While the board feels a need to 'save money' by disabling some of the lights this has created an unsafe element in terms of being able to see, especially after dark with no additional ambient light coming in from the windows. This puts everyone for increased falling since it is now difficult to see if anything might be on the ground and pose a trip hazard. Should someone gain access to the garage, they could feasibly lay in wait for anyone coming or going from the garage. I know I do not want to be surprised by a would be attacked when I have bags of groceries or worse yet, have to use my cane or walker because of my back flaring up.
>
> For their records, let them know that yes I do have a handicapped placard but that we are able to cope with the existing parking situation, should that change, they will be notified ASAP. If they require documentation from the doctor or a copy of the placard I will tender that to them upon their request.

(Id.) Ms. Reichard responded to Yamaguchi on May 12, saying:

> Thanks Ben. I will bring that information to the board. It is our plan to

> have a handicapped policy with spots reintroduced very soon. If Bryan has a need prior to that, please let me know.
>
> These handicapped spaces would have probably already been in place, but due to legal action being taken on the part of resident(s) in the building, we now have had an obligation to obtain an official legal recommendation in order to protect the building, your, my, & the other owner's assets. We are currently in flux awaiting that recommendation. ..."

(Id.) The rest of her email addressed Cardenas' comments about the garage lighting, and discussed the status of the building's reserves.

On May 21, 2010, Yamaguchi sent an email to "Jeff" (Jeff Blanton, the District Manager for Towne Properties, managing agent for the condominium association), stating: "Jeff, My partner and resident of the American Building unit 604, Bryan Cardenas, is handicapped and requests special consideration for parking accommodations in the parking garage. Please forward this to the Board for their consideration. Thank you, Ben Yamaguchi." (Yamaguchi Dep. Ex. 2) On June 1, not having received a response, Yamaguchi sent another email to Blanton: "I am requesting for a second time special consideration for parking for one of my spaces due to my partners handicap status. He needs a space that provides for clear ingress and egress from the building with unfettered access from more than three stairs. Pursuant to the by-laws, the board has thirty days to respond with a resolution. Thank you, Ben Yamaguchi." (Id.)

In a June 3 letter, Blanton responded to Yamaguchi and stated: "As you may know, a parking policy for responding to the needs of residents with disabilities is currently under review by the Association's attorney. In the meantime, and in response to your request, the Board has agreed to temporarily re-designate for your unit a parking

space that is one of those the developer originally marked for handicapped use." Blanton requested a copy of Cardena's parking placard issued by the Bureau of Motor Vehicles, a doctor's note documenting the requested accommodation, and a description of the kind of parking place he needed. Blanton asked Yamaguchi to designate which of his two parking spaces he wanted to exchange for the designated handicapped spot, so that both spots could be appropriately remarked once the requested documents were received. Blanton closed by stating, "We hope that this temporary measure will address your needs, and appreciate your cooperation until the new policy has been adopted by the association and can be implemented." (Id. at 3)

On July 4, Cardenas wrote to Blanton and enclosed copies of the requested documentation. He stated that his "physical requirements are to be within 75 feet of the entry door. If my condition is aggravated I do use a cane, on rare occasions I am confined to a wheelchair ... if there is a space available close to a ramp, that would be the best case scenario for me. We will relinquish the parking space at the windows (exterior wall) for the move." (Yamaguchi Dep. Ex. 4) Cardenas attached his Ohio Bureau of Motor Vehicles application for a disability placard, which was dated June 8, 2010 and issued on June 9, 2010. (Id.)

In the midst of these communications, the Board of Directors met with OCRC investigators on June 10, 2010. The Board agreed to provide Cardenas with a dedicated parking spot, a decision that the Board believed OCRC would have to approve given its ongoing investigation. Mr. Taake avers that the "Board relied upon the OCRC investigators' guidance and direction to determine the appropriate reasonable accommodation for Cardenas." (Doc. 45-1, Taake Declaration at ¶8) The

first time that OCRC actually asked the Board to assign a dedicated parking spot to Cardenas was on September 23, 2010. On or about October 10, Cardenas was formally assigned a dedicated parking space near a ramp and with aisle access, as he had described in his July 4 email to Blanton. (Id. at ¶¶ 22-23) After July 4, neither Cardenas nor Yamaguchi requested a different accommodation for Cardenas. Yamaguchi and Cardenas vacated Unit 604 in March 2011; Yamaguchi continues to own the unit.

Plaintiffs filed their complaint in this case on April 11, 2012 against American Building Condominium Corporation, Inc., and Towne Properties Asset Management Co. (Doc. 1) They filed an amended complaint on July 26, 2012, asserting claims under the federal Fair Housing Act Amendments of 1988, 42 U.S.C. §3601 et seq.; Ohio Revised Code 4112; and Ohio Revised Code 4511.69. They also alleged that Defendants breached the implied covenant of habitability by failing to provide Plaintiffs with a safe, secure and habitable residence and residential parking. (Doc. 21 at ¶23)

Defendants moved for summary judgment on the claims brought by Cardenas and Yamaguchi. (Doc. 45) Defendants filed proposed findings of fact and conclusions of law which, if undisputed, they argued established their right to entry of judgment. Plaintiffs opposed the motion only with respect to Cardenas' failure to accommodate claim. (Doc. 51)

III. Standard of Review

Federal Rule of Civil Procedure 56(a) provides in relevant part: "A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, the United States Supreme Court has explained that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," such as disagreements about the legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

The district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249.

The Magistrate Judge's Report and Recommendation that is dispositive of a party's claim or defense shall be subject to *de novo* review by the district court, in light of the specific objections filed by any party. See Fed. R. Civ. P. 72(b); Vogel v. U. S. Office Prods. Co., 258 F.3d 509, 515 (6th Cir. 2001).

IV. Discussion

The Fair Housing Act Amendments of 1988 ("FHAA") and Ohio Rev. Code

4112.02(H) prohibit discrimination in the provision of housing accommodations based on individual's disability. Claims brought under these statutes are analyzed using the same standards, so the Court will consider them together. Groner v. Golden Gate Gardens Apartments, 250 F.3d 1039, 1043 (6th Cir. 2001).

The FHAA requires persons and entities subject to the statute "... to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To establish a failure to accommodate claim under the FHAA, a plaintiff must show: (1) he is disabled; (2) defendant knows or reasonably should be expected to know of the disability; (3) an accommodation is necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling; (4) the accommodation is reasonable; and (5) the defendant refuses to make the requested accommodation. Overlook Mut. Homes, Inc. v. Spencer, 415 Fed. Appx. 617, 621 (6th Cir. 2011)(unpublished), citing Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2005).

The Sixth Circuit has stressed that, for purposes of determining whether or not a requested accommodation is required under the terms of the statute,

> ... the three operative elements are 'reasonable,' 'equal opportunity' and 'necessary.' ... An accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens.' ... 'Equal opportunity' under the FHAA is defined as 'giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream.' ... Linked to the goal of equal opportunity is the term 'necessary.' ... In order to prove that an accommodation is 'necessary,' plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.

Howard v. City of Beavercreek, 276 F.3d 802, 806 (6th Cir. 2002)(internal citations and quotations omitted).

Defendants do not deny that Cardenas is disabled, or that the requested accommodation for disability - a reserved handicap-accessible parking spot - is reasonable. The Magistrate Judge noted that Defendants were on notice of Cardenas' disability as early as May 12, 2010, and suggested that the second element of the claim was not in genuine dispute. She found a genuine factual dispute exists as to whether the requested accommodation was necessary, based on the communications between Cardenas, Yamaguchi, and the Defendants from May to October 2010. And she noted that while Defendants eventually accommodated Cardenas by reserving a parking space for him, they did not do so until October 2010, nearly five months after the first request. The Magistrate Judge largely relied on Shapiro v. Cadman Towers, Inc., 844 F.Supp. 116 (E.D.N.Y. 1994), which involved a tenant's FHA claim arising from a housing cooperative's refusal to provide an indoor parking space, which plaintiff had requested as an accommodation for her multiple sclerosis.

In their objections (Doc. 64), Defendants first contend that the Magistrate Judge erred in failing to consider their supplemental reply brief. They argue that their brief establishes that there is no genuine factual dispute remaining for trial regarding Cardenas' failure to accommodate claim. And they object to the Magistrate Judge's rejection of their arguments concerning the improper nature of Cardenas' tenancy at the American Building, which they also contend mandates dismissal of his claims.

A brief review of the summary judgment briefing is necessary to resolve Defendants' first objection. In their original response to Defendants' motion, Plaintiffs

filed a response brief (Doc. 51) but did not file a color-highlighted version of Defendants' proposed findings of fact and conclusions of law, as required by this Court's Scheduling Order. When Defendants noted that failure in their reply brief, Plaintiffs sought leave to file a properly highlighted statement. (Doc. 54) The Magistrate Judge granted Plaintiffs leave to do so over Defendants' objections, and permitted Defendants to file a supplemental reply memorandum no later than 14 days from the date of that order. (Doc. 62) The Magistrate Judge's order was filed on January 6, 2014, and Defendants' supplemental reply was therefore due on January 20, 2014. January 20, 2014 was a federal legal holiday, the Birthday of Martin Luther King, Jr. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the filing deadline was extended by one day. Defendants filed their supplemental reply on January 21, 2014. However, the Magistrate Judge did not consider the supplemental reply "because defendants did not obtain leave of court to file it." (See Doc. 66 at 1, n.1) This Court will **sustain** Defendants' objection on this issue, as it is evident that the Magistrate Judge erred in concluding that it was improperly filed.

Defendants' supplemental reply memorandum (Doc. 64) notes that in his highlighted response to Defendants' proposed findings of fact, Cardenas disputed only six of the 53 proposed factual findings set forth by the Defendants. Defendants argue that four of those six cannot be disputed because Cardenas admitted all of them in his deposition. The other two proposed facts are fully supported by the record, and Cardenas fails to cite any contrary evidence. Defendants argue that because the facts are not in genuine dispute, they are entitled to judgment on Cardenas' failure to accommodate claim.

Cardenas identified as disputed (or "not true") Proposed Findings of Fact #25,

that Cardenas filed his OCRC charge "without ever advising Defendants that he was disabled or needed an accommodation for parking," and #30, that neither Yamaguchi nor Cardenas gave any indication to the Board that his condition had changed between May 12 and May 21 (the dates of the emails discussed above). Cardenas testified that he did not advise the Board of his disability or his need for an accommodation before he filed his OCRC charge. He was asked if, after his May 12 email (stating that the parking "as such is fine" and that he would inform the Board if his condition changed) and before Yamaguchi's May 21 email, he ever told the Board that his situation had changed; Cardenas responded "I don't recall." (Cardenas Dep. at 38) While Cardenas claims this issue is in dispute, he has proffered no evidence suggesting that there is a **genuine** factual dispute on this issue.

Proposed Finding of Fact #34 states that "the Board believed it needed the OCRC's approval" of its June 10 decision to provide Cardenas with a dedicated parking spot accommodation. Cardenas disputed this fact, but he cites no evidence to contradict Taake's unrebutted declaration. The same is true with respect to Proposed Finding of Fact #35, stating that the Board "relied upon the OCRC investigators' guidance and direction" in determining the appropriate accommodation necessary for Cardenas. Cardenas also disputed Proposed Finding #38, stating that "Neither Cardenas nor Yamaguchi ever requested any different parking accommodation" than the permanent one provided by the Board in October 2010: a dedicated, assigned parking space with aisle access near a ramp. But the record fully supports Defendants' proposed finding. On May 12, Cardenas stated that he was "able to cope with the existing parking situation" and he would inform the Board "ASAP" if that situation

changed. On May 21, Yamaguchi asked Blanton for "special consideration for parking accommodations" but did not describe any particular needs Cardenas had at that time. On June 1, Yamaguchi told Blanton that Cardenas needed "clear ingress and egress from the building with unfettered access from more than three stairs." Then on July 4, Cardenas told Blanton that his "physical requirements are to be within 75 feet of the entry door. ... [I]f there is a space available close to a ramp, that would be the best case scenario for me." That is the last communication from Cardenas or Yamaguchi describing the particular requirements for the requested parking spot.

Finally, Cardenas disputed Proposed Finding of Fact #45, stating that "other than legal fees and expenses ..., Cardenas testified that he has not suffered any monetary out-of-pocket losses as a result of not having a handicapped parking spot." But Cardenas testified that he did not suffer any out-of-pocket losses aside from legal fees and expenses; see Cardenas Dep. at 24, lines 18-21. He has not identified any evidence establishing a genuine dispute on this issue.

The Court concludes that Defendants' proposed findings of fact are not genuinely disputed and are true. The question, then, is whether those undisputed facts entitle Defendants to summary judgment on Cardenas' failure to accommodate claim. In other words, is there sufficient evidence on which a jury could reasonably return a verdict in his favor? This Court must conclude that no reasonable jury could find in favor of Cardenas, because he has not carried his burden of establishing that Defendants denied an accommodation to Cardenas, or that the delay in providing the dedicated parking space with ramp access was so unreasonable as to amount to a denial.

In Astralis Condo. Ass'n v. Secretary, 620 F.3d 62 (1st Cir. 2010), the court of

appeals affirmed an administrative law judge's decision awarding injunctive relief, requiring a condominium association to provide dedicated parking spaces to two disabled residents. The plaintiffs, a married couple, purchased their condominium unit in 2005. The plaintiffs' disabilities were evidently obvious, as they both displayed significant mobility problems and were seen having great difficulty walking in the common areas of the complex. In early 2006, they requested the Board to grant them exclusive use of two handicapped parking spaces closest to their unit. At the time, the Board had in place a first-come, first-served policy governing use of the handicapped spaces. The Board discussed their request several times, and plaintiffs provided medical information about their conditions. The parties continued to discuss a potential resolution, but after a year no agreement had been reached. The plaintiffs then filed an administrative complaint with HUD in February 2007. The Board met with the HUD investigator, who attempted mediation without success. The board then held a residents meeting in March, at which the plaintiffs formally requested the exclusive use of the two spots. The Board denied their request. HUD then filed a administrative claim against the association, and an ALJ found it had violated the FHAA. The ALJ ordered the Board to provide plaintiffs with exclusive use of the two parking spots. The First Circuit affirmed, finding that the circumstances permitted a reasonable inference that the Board "effectively short-circuited" HUD's attempts at mediation and then denied the requested accommodation.

Here, in contrast, Cardenas filed his OCRC complaint **before** he ever requested any accommodation from the Defendants, and before he informed the Defendants about his disability. When the Board first inquired about his disability in the May 12

email to Yamaguchi, Cardenas responded that he was "able to cope with the existing parking situation." On May 21, Yamaguchi told Jeff Blanton that he was requesting "special consideration" for Cardenas' parking needs, but did not describe what those needs were or what "special consideration" Cardenas may have needed at that time. On June 1, Yamaguchi asked for a space with clear ingress/egress "with unfettered access from more than three stairs." (Yamaguchi Dep. Ex. 2) And on June 3, the Board **agreed** to temporarily designate for Cardenas' use one of the parking spaces originally marked for handicapped use. The Board informed him that it was in the process of developing a formal parking policy, but they hoped that the temporary designation would address his needs. This is not, and cannot be reasonably construed to be, a "denial" of Cardenas' request, nor it is such an inordinate delay as to be a constructive denial. Moreover, it was not for another month, on July 4, that Cardenas first mentioned additional requirements for his parking accommodation; he stated then that his space must be within 75 feet of the entry door, and "if there is a space available close to a ramp, that would be the best case scenario for me." (Yamaguchi Dep. Ex. 4)

The Sixth Circuit has stressed that a plaintiff asserting a failure to accommodate claim under the FHAA has the burden of establishing that his requested accommodation was denied. In Overlook Mutual Homes, Inc. v. Spencer, 415 Fed. Appx. 617 (6th Cir. 2011), cited above, the court of appeals affirmed a district court's grant of judgment as a matter of law against the Spencers, residents of Overlook (a nonprofit mutual housing association), who alleged that Overlook denied them a reasonable accommodation by allowing their daughter to keep a companion dog as an exception to Overlook's long-standing "no pet" rule. The Spencers' daughter had an anxiety disorder, and they

adopted a dog that they claimed had a calming effect on their daughter. Their psychologist recommended that the family use the dog as a emotional support animal to facilitate treatment. They formally requested an accommodation (through a local advocacy group) in August 2007, providing the psychologist's letter. Overlook told the Spencers to submit a waiver request to the Board with additional information about their daughter's condition. The Spencers submitted the waiver request but objected to providing additional information, and filed a charge with OCRC. The Board then asked for a release to obtain their daughter's medical records, and held the waiver application until the records were received. The Spencers refused to provide a release; and after a series of communications did not resolve the dispute, Overlook instituted a declaratory judgment action in federal court, seeking a determination that it was not required to make the requested accommodation due to the Spencers' refusal to provide medical information supporting the request. The Spencers counter-claimed for violations of the FHAA and Ohio's fair housing law.

The district court eventually denied both parties' cross-motions for summary judgment, and the case proceeded to a jury trial. At the close of the evidence, the district court granted Overlook's motion for judgment as a matter of law on the Spencers' counterclaims because they had not established that Overlook had actually denied their request for a reasonable accommodation. The court noted that Overlook sought a declaratory judgment on an unsettled question of law (whether a companion animal must be a trained "service animal" in order to qualify under the FHAA). But by doing so, and consequently delaying a final decision on the waiver request, Overlook did not constructively deny the Spencers' accommodation. And the Board had

permitted the dog to remain with the family pending the resolution of the case. The Sixth Circuit affirmed, noting that the Spencers' initial request was supported by the psychologist's letter that did not include a diagnosis or an explanation of how the proposed accommodation was related to the daughter's disability. The court found that Overlook was entitled to ask for additional information, and the attendant delay in reaching a final decision did not amount to a constructive denial.

The case upon which the Magistrate Judge relied, Shapiro v. Cadman Towers, Inc., 844 F.Supp. 116 (E.D.N.Y. 1994), aff'd 51 F.3d 328 (2d Cir. 1995), is clearly distinguishable from the facts of this case. There, the plaintiff asked for a disability accommodation from her apartment's Board of Directors, an assigned parking space on the ground floor of the garage of her building. The Board repeatedly denied her request due to a lengthy waiting list of residents wanting parking spaces in the garage. The Board told plaintiff to put her name on the waiting list, and that it would only consider her requested accommodation when she arrived at the top of the waiting list and was actually eligible for a parking space. The evidence established that due to very low turnover in the building, applicants on the waiting list had to wait for many years to receive a space. Plaintiff filed an administrative complaint with HUD, and then a civil action under the FHAA seeking injunctive relief. The district court granted a preliminary injunction, and specifically noted that the defendants **freely admitted** their refusal to make **any** accommodation to the plaintiff. Id. at 123. That is plainly not the situation in this case.

Another case in which a delay was found to be a constructive denial is Groome Resources, Ltd. v. Parish of Jefferson, 234 F.3d 192 (5th Cir. 2000). There, the plaintiff operated group homes for Alzheimer's patients in the Greater New Orleans area. It purchased a home in a residential district of Jefferson Parish, whose zoning ordinance permitted groups of not more than four unrelated people to live in a single-family residence. Groome Resources applied for a variance to allow five residents in the home, a variance it had been granted for another home in a different residential district within the Parish. Both the Parish attorney and the Department of Code Enforcement recommended approval, but neighborhood opposition suddenly arose and a local councilman urged the Parish Council to deny the variance. In view of the opposition, no formal decision was issued. Over a month later, Groome Resources inquired about the status of the variance, stating that it had to pay damages due to the delay in closing the property's sale (which was contingent on obtaining the variance). The Parish responded by asking for more information on the company and the proposed variance, which Groome promptly submitted.

Groome Resources then filed suit in federal district court, seeking an injunction requiring the Parish to approve its accommodation request. The district court ordered the Parish to issue the variance. Even though the Parish had not actually denied the requested accommodation, the evidence established that the Parish had no plan to act on Groome's request, and the Parish attorney "could not say what the current status of the application was, what if anything remained to be done to complete the process or when it might be done, and could not say who the ultimate decision maker would be." Id. at 197. The Fifth Circuit affirmed, noting that the Parish's "unjustified and

indeterminate delay" amounted to a constructive denial of the requested accommodation.

Here, in sharp contrast, Cardenas filed an OCRC charge before he made any specific request for a parking accommodation. And by July 4, 2010, his requested accommodation had crystallized to include ramp access and specific distance limitations. Before that date, the Board had already agreed to provide a temporary designated spot pending its adoption of a formal parking policy and OCRC's approval of a permanent solution. Any attendant delay due to the Board's decision to work through OCRC and obtain its approval cannot be analogized to the sort of "stone-walling" behavior that was at issue in Groomes Resources, especially because it was Cardenas' choice to involve OCRC before requesting an accommodation from the Board. The record is undisputed that OCRC first asked the Board on September 23, 2010 to provide a permanent parking spot to Cardenas in accordance with his July 4, 2010 specifications; the Board did so shortly thereafter, on or about October 10, 2010. These undisputed facts simply do not show that the Defendants denied or constructively denied Cardenas' requested accommodation.

Defendants also objected to the Magistrate Judge's rejection of their arguments that Cardenas' tenancy violated the condominium declarations, and therefore he was not a proper resident of the American Building. The Magistrate Judge noted that Defendants did not raise this issue prior to filing their summary judgment motion, and suggested that the belated assertion might reflect pretext. (Doc. 66 at 16) Since the Magistrate Judge issued her Report, the Sixth Circuit has clarified that issues of intent and pretext do not apply to an FHAA reasonable-accommodation claim, because such

claims do not require proof of discriminatory intent. See Hollis v. Chestnut Bend Homeowners Ass'n, ___ F.3d ___, 2014 U.S. App. LEXIS 14392, at *22-23 (6th Cir., July 29, 2014). Nevertheless, the Court agrees that Cardenas' specific status as a sub-lessee of James Williams or Yamaguchi's partner is not relevant to his reasonable accommodation claim. The FHAA, 42 U.S.C. §3604(f)(2), prohibits discrimination against "any person" in the provision of services or facilities in connection with a dwelling, because of a handicap of that person. Cardenas would appear to fall within the scope of protections afforded by that statute, as Mr. Yamaguchi intended that Cardenas reside with him, and he was a "person associated with" Mr. Yamaguchi.

On the undisputed facts supported by the record in this case, the Court concludes that Cardenas has not established that Defendants violated the FHAA by denying his request for an accommodation. Accordingly, the Court will SUSTAIN the Defendants' objections. The Court adopts in part the Magistrate Judge's Report, and will grant summary judgment to the Defendants on all claims brought by Plaintiffs Yamaguchi and Cardenas. Plaintiffs shall bear the costs of this action.

This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

DATED: September 24, 2014

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court